[No. 8180.]

## CITY AND COUNTY OF DENVER V. REPUBLICAN PUBLISHING COMPANY.

AUDITOR—*Effect of His Findings.* Where the auditor of a city, authorized thereunto by the law, audits and allows a claim legally chargeable against it, the city will not be allowed to question the result, because of facts then existing, and unknown to the auditor, but which proper examination would have brought to his attention—no fraud, misrepresentation or effort of the adversary party preventing the examination, being alleged. (574.)

*Error to Denver District Court.*  Hon. JOHN H. DENISON, Judge.

Mr. I. N. STEVENS, and Mr. J. A. MARSH, for plaintiff in error.

Mr. THOMAS WARD, JR., and Mr. HARRY S. SILVERSTEIN, for defendant in error.

The City and County of Denver brought an action against the Republican Publishing Company to recover a sum which it claimed was paid for legal advertising in the paper published by defendant (The Denver Republican), in excess of the amount to which the company was entitled for such advertising.

The complaint alleged that for each year named the plaintiff entered into an agreement with the defendant whereby legal notices of the municipality published in its newspaper were to be paid for at a rate specified per line; that by the laws of the state it is provided that charges for the publication of legal notices should be made and computed at twelve lines to the inch, "nonpareil" type; that subsequent to the time of the agreements mentioned, the defendant rendered plaintiff accounts for the publication of legal notices in the newspaper named; that the charges for the publication of such notices were made at the rate of

fourteen lines per inch, "agate," for each publication which it is alleged was an overcharge of two lines per inch for every inch of advertising space occupied by the notices published, and that plaintiff believing the accounts rendered for the publishing of such notices were correct, paid them, when in fact they were not correctly stated. The complaint then states the alleged overcharges in detail; that a demand for the return of the amount thereof had been made, and prays judgment for the aggregate sum thereof. The defendant interposed a general demurrer, which was sustained. The plaintiff elected to stand by its complaint and the action was dismissed. The plaintiff has brought the case here for review on error.

Section 48 of the city charter is as follows:

"Every demand upon the treasurer, except the salaries of the auditor and his employes, shall, before payment, be presented to the auditor, who shall determine that the money is legally due, its payment authorized by law, against what appropriation and out of what fund it is payable. If he allow it, he shall endorse upon it the word 'allowed,' with the name of the fund out of which it is payable, the date of allowance, and sign his name thereto; if he does not allow it, he shall endorse upon it the word 'rejected.' No demand shall be approved or paid unless presented as required by this charter."

By a subsequent section of the charter it is provided that money shall not be paid out by the treasurer, for any purpose, except upon warrants drawn upon him by the auditor, unless otherwise provided by the charter. By section sixty-two it is provided that contracts for official advertising shall be let annually to the lowest responsible bidder publishing a daily newspaper of general circulation in the City and County of Denver, printed in the English language.

The statutory provision referred to in the complaint is section 3934, Revised Statutes, 1908, and is as follows:

"Publishers of newspapers in this state shall be entitled

to receive the following fees:    For the publication of all legal advertising in newspapers required to be done by law in this state, publishers shall be paid at the rate of seven cents for each line of nonpareil, measure thirteen ems (pica) wide, for the first insertion, and four cents for each subsequent insertion.    In ascertaining charges under the provisions of this act, twelve lines shall be counted to the inch, and all emblems, display headings, rule work and necessary blank space shall be paid for as if solid type.    And any public or municipal officer or board created by or existing under the laws of this state that has now, or may hereafter be authorized by law to enter into contracts for the publication of legal advertisments, is hereby authorized, subject to other limitations on said authority, now imposed by law, to agree to pay therefor prices not exceeding said rates."
By the contracts pleaded, the rates per line were much less than those fixed by the foregoing statutory provision.

GABBERT, C. J., delivered the opinion of the court:

According to the averments of the complaint, the legal notices paid for were published under special contracts at a specified rate per line; that in the bills rendered and paid the defendant charged at the rate of fourteen lines per inch for each of the notices, which it is averred was an overcharge of two lines per inch, and that plaintiff believing the accounts rendered were correct, paid them, when in fact they were not correctly stated.    By these allegations we understand from the briefs of counsel representing plaintiff it is alleged that defendant rendered bills for a specified number of lines which, however, were computed by counting fourteen lines to the inch, instead of twelve lines to that space.    There is no allegation in the complaint setting up fraud, deceit or any wilful attempt on the part of defendant to obtain any sum of money not due it under the provisions of the contracts between the parties, and the claim of plaintiff is based entirely upon the assumption that in the bills rendered the number of lines were computed at fourteen

per inch, when they should have been computed at twelve. Conceding this to be correct, plaintiff has not stated a case. The city was empowered to enter into contracts for its official advertising, and when the accounts therefor were presented for payment, the only question for its authorized official to determine was whether they were correct. This duty devolved upon the auditor. There is no averment from which it can be inferred that such accounts were so itemized that he was misled, or that defendant made any misrepresentations regarding them, or that by reason of any action on the part of defendant he was precluded from ascertaining the number of lines contained in each notice, computed in conformity with the statute, even if it be conceded that the computation should have been so made. It is simply averred that plaintiff believed the accounts were correct and paid them, which must be taken to mean that the auditor believed them to be correct, without any investigation, and issued warrants therefor, which were paid by the treasurer. When power is given an official of a city to audit and allow claims legally chargeable against it, the law presumes that he will investigate those presented, and it is clearly his duty to do so. He cannot formally allow a claim without any investigation, or effort to investigate, and the city afterwards be permitted to rescind his action, because of facts existing but not known at the time the account was allowed, and which a proper examination would have brought to his attention. To hold otherwise would encourage gross carelessness in the performance of official duties in reliance upon a future investigation to correct, and no one would know whether the allowance of his account was final, or at least until the statute of limitations had set the question at rest. In the absence of fraud the official who is given the power to allow claims, when he has officially passed upon a claim, must be conclusively presumed to have had at the time full knowledge of all the facts pertaining thereto which a proper investigation would then have disclosed. *Ward v. Barnum,*

10 Colo. App. 496, 52 Pac. 412; *Advertiser & Tribune Co. v. Detroit,* 43 Mich. 116, 5 N. W. 72.

The judgment of the District Court is affirmed.

*Judgment Affirmed.*

HILL, J., and TELLER, J., concur.